IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.  2:17mj562 |
| | ) | |
| ERIC BRIAN BROWN | ) | |

## DEFENDANT'S EMERGENCY MOTION TO ENJOIN FORCIBLE MEDICATION

The defendant, Eric Brian Brown, through counsel, hereby seeks to immediately enjoin the Attorney General, acting through the Bureau of Prisons (BOP), from conducting non-judicial proceedings outside the presence of Mr. Brown's attorneys for purposes of involuntarily administering unspecified psychiatric medications.  The involuntary administration of psychiatric medications should be enjoined pending a hearing and judicial determination of the appropriateness of forcible medication in this case.  This motion is based on the Due Process Clause of the United States Constitution, 28 C.F.R. § 549.43, any and all applicable provisions of the federal constitution and statutes, and any further evidence as may be adduced at a hearing on this motion.

Because BOP notified counsel at 1:08PM today of the hearing planned for 2:00PM tomorrow, and because proceeding with the hearing and/or with forced medication will cause irreparable harm to Mr. Brown, the defense seeks emergency relief in the form of a preliminary injunction.

### I.    Introduction

The Attorney General, acting through the Bureau of Prisons, and without first seeking the approval of this Court, has decided to conduct an internal proceeding to determine whether the

Department of Justice—in its own discretion—may involuntarily and forcibly medicate Eric Brian Brown on the grounds that he is a danger to himself or others.  At 1:08PM on May 31, 2018, Janet Oakley, a registered nurse from FMC Butner where Mr. Brown is currently housed as a pretrial detainee, called Mr. Brown's attorneys to provide notice that this internal administrative proceeding will be held on June 1, 2018, at 2:00PM.  Ms. Oakley denied counsel's specific request to attend the proceeding either in person or by phone.

Ms. Oakley said that she would be serving as Mr. Brown's "staff representative" at the hearing.  When asked, she indicated that she did not know what medications were being proposed for forcible medication.  She also noted that when she attempted to explain the planned proceedings to Mr. Brown earlier on May 31, Mr. Brown did not look at her, respond to her, or otherwise demonstrate an understanding of what she was saying.  This Court has already found Mr. Brown to be incompetent to stand trial.  Sealed Order, at 2 (Jan. 25, 2018).

In *United States v. Loughner*, No. 11-10339, 2011 WL 2694294, at *1 (9th Cir. July 12, 2011), the Bureau of Prisons conducted a similar administrative hearing, the defendant sought a preliminary injunction, and the district court denied it.  The Ninth Circuit held that the district court abused its discretion by denying the defendant's emergency motion for a preliminary injunction.  The court wrote:

> There is a serious question whether the decision to involuntarily medicate a pre-trial detainee with psychotropic drugs may be made by prison authorities pursuant to *Washington v. Harper*, 494 U.S. 210, 227 (1990), or by the district court applying the *Harper* substantive standard, *see United States v. Hernandez–Vasquez*, 513 F.3d 908, 914, 919 (9th Cir. 2008).  That question will be addressed by a merits panel after briefing.  The only question before us is whether the district court abused its discretion by denying Loughner's emergency motion for a preliminary injunction enjoining the Federal Medical Center in Springfield, Missouri, from involuntarily medicating him after conducting a *Harper*

administrative hearing and determining that he represents a danger to others.  *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  We conclude that it did.

In a split decision after full briefing, the Ninth Circuit eventually decided the merits question against Mr. Loughner.  *See United States v. Loughner*, 672 F.3d 731, 735 (9th Cir. 2012).  But those legal questions remain unsettled in the Fourth Circuit; the majority and dissenting opinions in *Loughner* represent persuasive authority from which jurists of this Circuit may draw insight, but neither is binding.  As in *Loughner*, a preliminary injunction is appropriate here to preserve the status quo and prevent Mr. Brown from suffering irreparable harm in the form of involuntary, forced medication administered at the sole discretion of the same Executive Branch agency that is simultaneously prosecuting him.

## II.       Legal Standards

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## III.      Argument

A preliminary injunction is appropriate in this case.  Mr. Brown is likely to succeed on the merits.  It cannot be constitutional for members of the same Executive Branch agency charged with carrying out Mr. Brown's prosecution to decide—in the context of an uncounseled administrative proceeding—whether this incompetent pretrial detainee can be forcibly medicated against his will.  Mr. Brown is also likely to suffer irreparable harm in the absence of preliminary relief for the reasons explained by Justice Kennedy in *Riggins*.  For the same reasons, the balance of equities tips in his favor, and an injunction is in the public interest.

> a.  The prospect of an incompetent, death-eligible pretrial detainee being involuntarily and forcibly medicated under the sole authority of an administrative proceeding conducted exclusively by members of the same Executive Branch agency that is prosecuting him, all while being denied even the presence of counsel, raises grave constitutional concerns creating a likelihood of success on the merits that warrants a preliminary injunction.

Mr. Brown enjoys a due process right to bodily integrity free of unwanted, forcible administration of psychiatric medication. *Washington v. Harper*, 494 U.S. 210, 221 (1990). That right has both a substantive and procedural component. *Id.* at 220. Both stand to be violated here if Mr. Brown is forcibly medicated following the proposed non-judicial hearing. Mr. Brown is incompetent to represent himself and has been denied representation of counsel at this hearing. His proposed staff representative is a nurse employed by the Department of Justice who did not even know the proposed medication to be administered less than 25 hours before the hearing. Moreover, Mr. Brown's "representative," the hearing officer who will preside over the hearing (Dr. Graddy), and the warden who will ultimately decide any administrative appeal are all agents of the same Executive Branch agency—the U.S. Department of Justice—that is prosecuting Mr. Brown in this potentially capital case.

Forcible medication on dangerousness grounds is governed by the standard set forth in *Harper* and *Riggins v. Nevada*, 504 U.S. 127, 135 (1992). The substantive question is "what factual circumstances must exist before the [government] may administer antipsychotic drugs to the prisoner against his will." *Harper*, 494 U.S. at 220. In the dangerousness context, the Supreme Court has held that the requisite "factual circumstances" are twofold: "[1] a finding of overriding justification and [2] a determination of medical appropriateness." *Riggins*, 504 U.S. at 135. Forced pyschotropic medication is not medically appropriate unless "considering less intrusive alternatives, [the medication regime] is *essential* for the sake of [the inmate's] own safety or the

safety of others." *Id.* (emphasis added).  Based on the limited information the BOP has shared with defense counsel about the sole incident that precipitated this hearing, none of these circumstances have been satisfied here.

Moreover, "[b]ecause [Mr. Brown] has not been convicted of a crime, he is presumptively innocent and is therefore entitled to greater constitutional protections than a convicted inmate, as in *Harper*." *United States v. Loughner*, No. 11-10339, 2011 WL 2694294, at *1 (9th Cir. July 12, 2011).  Unlike a convicted person serving a lengthy prison term, additional concerns about the administration of psychotropic medication are raised in the pretrial context because potential side effects of the medication have "an impact upon not just [the detainee's] outward appearance, but also the content of his testimony on direct or cross examination, his ability to follow the proceedings, or the substance of his communication with counsel." *Riggins*, 504 U.S. at 137; *see id.* at 139 (Kennedy, J., concurring) (comparing forced medication to the manipulation of material evidence).  Thus, under these circumstances, the need for Mr. Brown to be represented by counsel at any hearing involving issues related to his mental health condition and treatment—issues which will both affect and likely be raised separately in subsequent proceedings in the criminal case—is particularly compelling.

Regardless of any administrative findings by DOJ officials, or their validity, the DOJ may not forcibly medicate a pretrial inmate, committed for restoration of competency, without the Court making its own findings after an adversarial hearing and with the assistance of counsel.  In *Sell*, the Supreme Court suggested that there may be instances in which *Harper* grounds warrant forcible medication pretrial.  539 U.S. at 181-82.  And these *Harper* grounds very well may present a more objective and manageable inquiry, but such "strong reasons" for addressing these alternative grounds are still only "for *a court* to determine" in the pretrial context, specifically to

determine "whether forced administration of drugs can be justified on these alternative grounds *before* turning to the trial competence question." *Id.* at 182 (emphasis added).

Absent a judicial determination following an adversary hearing at which a pretrial detainee is represented by counsel, *Harper* does not authorize the forcible medication of such an individual who has been committed for restoration of competency. *Harper* considered and approved a decision by medical professionals to medicate an *imprisoned, convicted felon* in order to mitigate his dangerousness in the prison setting. Applying the traditional balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), the *Harper* Court found further procedural protections unnecessary for a post-trial convicted felon. 494 U.S. at 229-36.

Two critical circumstances differentiate this case from *Harper*. First, the medical professionals in *Harper* were unconflicted. They had no interests other than safely confining the convicted prisoner. Here, FMC Butner has been tasked by the court with restoring Mr. Brown to competency—or at least placing him in "treatment … for his Schizophrenia… with the purpose of continuing to evaluate his mental competency." Sealed Order (Jan. 25, 2018). Moreover, officials at FMC Butner have already informally indicated to Mr. Brown's counsel that they will be recommending in a forthcoming report that Mr. Brown be forcibly medicated for the express purpose of restoring him to competency. That is, these same DOJ employees are soon expected to seek this same forced-medication solution to a different problem: advancing the government's weighty interest in obtaining a verdict on the charge against Mr. Brown. *Cf. Sell*, 539 U.S. at 180. The effect of these conflicting duties and potentially overlapping motives is one reason why additional procedural protections are warranted.

The structural conflict presented in this case is also striking and disturbing. The same Executive Branch agency that is prosecuting Mr. Brown in this criminal proceeding will be vested

with every role in this purportedly-adversarial *Harper* hearing. A DOJ employee will "represent" Mr. Brown, a DOJ employee will present evidence to the hearing officer, a DOJ employee will act as hearing officer, and—upon the filing of any administrative appeal—a DOJ employee will resolve the appeal. This not only presents obvious conflict of interest concerns, but serious questions about constitutional separation of powers. *See generally N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 70 (1982). The same government entity seeking to ultimately deprive Mr. Brown of his liberty in this criminal case cannot be charged with safeguarding his liberty in the associated *Harper* hearing.

Second, because the decision to be made in *Harper* was solely medical in nature, the *Harper* Court believed a decision by a judge following an adversarial hearing would not reduce the risk of error. Here, the decision is not solely medical. As recognized by the Supreme Court in *Riggins* and *Sell*, a decision to forcibly medicate a pretrial detainee has grave implications for that individual's right to a fair trial. Those rights are legal in nature. And balancing the risk to those rights against the utility of medication is a legal endeavor appropriately undertaken by the judiciary, not doctors.

Moreover, several unique circumstances require that Mr. Brown's lawyers be allowed to participate in any *Harper* proceeding. These circumstances include but are not limited to the following: 1) Mr. Brown is a pretrial detainee who could face charges that would make him eligible for the death penalty, 2) Mr. Brown's mental health status is likely to be an issue in his criminal trial and at any sentencing or penalty phase, 3) Mr. Brown has already been found unable to competently assist counsel in his criminal case, casting serious doubt upon his ability to adequately represent his own interests or assist non-lawyer representatives at an administrative hearing, and 4) Mr. Brown's lawyers possess information relevant to the need to forcibly medicate on the basis

of protecting his safety or the safety of others, which information Mr. Brown likely does not possess or have access to in his current condition.

Finally, the planned administrative proceeding cannot satisfy *Riggins*' medical appropriateness requirement—and Mr. Brown's proposed staff representative cannot be sufficiently prepared to represent his interests—for an independent reason. Less than 25 hours before the hearing was supposed to commence, Mr. Brown's staff representative did not even know the name of the medication proposed for forcible administration. How can Mr. Brown's representative determine the likely side-effects or efficacy of medication if the medication is not even identified? Presumably, specific information about proposed dosing would be relevant as well.

Indeed, *Harper* and *Riggins* make clear that medical appropriateness must be determined by reference to the actual drug and dosage prescribed. In *Harper*, the Supreme Court upheld a due process challenge to a state prison's involuntary medication policy. In doing so, the Court expressly relied on the fact that the state policy required the proposed medication to "*first be prescribed* by a psychiatrist," reviewed by a second psychiatrist, and specifically refused by the inmate before the administrative process could even be invoked. *Harper*, 494 U.S. at 222 & n.8 (emphasis added). This point was central to the Supreme Court's approval of the "medical appropriateness" prong; it was the subject of extended debate between the majority and dissent in *Harper*. *See id.* (addressing the dissent's concern that treatment would be permitted without a medical appropriateness determination by reference to the state policy's initial-prescription provision).

*Riggins*, decided two terms later, reinforced *Harper*'s emphasis on the specific drug prescribed. Interpreting *Harper*'s medical appropriateness holding, *Riggins* made clear that

satisfaction of that prong was dependent on the appropriateness of the *actual drug prescribed*; indeed, the *Riggins* opinion even identified the specific drug by name. The Supreme Court explained that once the prescribed medication was refused, "the State became obligated to establish the need for Mellaril and the medical appropriateness *of the drug*." *Riggins*, 504 U.S. at 135 (emphasis added).

Identification of the proposed drug of administration is inherent in the *Harper/Riggins* requirement that the administrative decision-maker "consider[] less intrusive alternatives" to determine whether the proposed medication is "essential" to ensure safety. *Riggins*, 504 U.S. at 135. Obviously, the identity of the proposed medication must be known before "alternatives" can even be identified. Indeed, as the Supreme Court has recognized, "[d]ifferent kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success." *Sell*, 539 U.S. at 181. And it is unclear how anyone who does not even know the name of the drug proposed for forcible medication could conceivably advance Mr. Brown's interests.

In sum, procedural and substantive due process problems abound. At a hearing, Mr. Brown will be able to demonstrate a likelihood of success on the merits.

        b.   <u>Mr. Brown is likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in his favor, and an injunction is in the public interest.</u>

People subjected to the sort of antipsychotic drugs at issue here "immediately face a risk of serious and potentially irreversible side effects." *United States v. Ruiz-Gaxiola,* 623 F.3d 684, 690 (9th Cir. 2010). The side effects of these drugs can even be fatal, as the Supreme Court has recognized. *Harper*, 494 U.S. at 229. Psychotropic drugs "alter the chemical balance in a patient's brain," and "can have serious, even fatal, side effects" including "acute dystonia, a severe involuntary spasm of the upper body, tongue, throat, or eyes," "akathisia (motor restlessness, often

characterized by an inability to sit still); neuroleptic malignant syndrome (a relatively rare condition which can lead to death from cardiac dysfunction); and tardive dyskinesia, …. a neurological disorder … that is characterized by involuntary, uncontrollable movements of various muscles, especially around the face." *Harper*, 494 U.S. at 230.  Tardive dyskinesia is "irreversible in some cases." *Id.*  As the Ninth Circuit held in a nearly identical circumstances, "Being forced to take medication carrying the risk of irreversible, possibly fatal side effects, no doubt amounts to irreparable harm." *United States v. Loughner*, No. 11-10339, 2011 WL 2694294, at *1 (9th Cir. July 12, 2011).

Similarly, Mr. Brown has "a strong personal interest in not being forced to suffer the indignity and risk of bodily injury that results from the administration of powerful drugs." *Id.* at *2.  The government's interest in protecting both Mr. Brown and those around him is also serious. But, as the Ninth Circuit held, the government's interest in this context is "less immediate." *Id.* As in *Loughner*, the government has managed to keep Mr. Brown in custody for over six months without injury to anyone.  *Id.*  Moreover, Mr. Brown is in a lockdown unit.  He is kept in the same cell 24 hours per day (with the exception of one hour of available recreational time, which the defense understands Mr. Brown never uses).  The defense does not doubt the BOP's good-faith concern for Mr. Brown's safety and the safety of others, but surely other safety precautions can be implemented on an interim basis until the merits of this issue are decided.  Finally, it is noteworthy that the *Harper* hearing appears to be predicated on a single alleged incident in which Mr. Brown swung chain restraints at a guard.  It is unclear why this single incident, in light of Mr. Brown's previous six months in custody without any alleged attempt to hurt another person, presents an immediate need for forced medication that cannot wait to ensure compliance with constitutional standards.

Finally, as the Ninth Circuit held in *Loughner*, "there is a strong public interest in preserving the safety and bodily integrity of individuals who are detained prior to trial and thus innocent in the eyes of the law."

## IV. Conclusion

At a hearing, the defense will be able to show that Mr. Brown is rightfully entitled to a preliminary injunction enjoining the government from conducting an administrative *Harper* hearing outside the presence of Mr. Brown's attorneys and enjoining the government from forcibly and involuntarily administering antipsychotic medications to Mr. Brown without due process.

Respectfully submitted,

ERIC BRIAN BROWN

By:_____/s/_____

Keith Loren Kimball
VSB # 31046
Attorney for Eric Brian Brown
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
(757) 457-0800
(757) 457-0880 (telefax)
keith_kimball@fd.org

Andrew W. Grindrod
VSB # 83943
Attorney for Eric Brian Brown
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
(757) 457-0800
(757) 457-0880 (telefax)
andrew_grindrod@fd.org

**CERTIFICATE OF SERVICE**

   I certify that on the 31st day of May, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

   Randy C. Stoker
   Kevin M. Comstock
   Assistant United States Attorneys
   Attorney for the United States
   United States Attorney's Office
   101 West Main Street, Suite 8000
   Norfolk, VA 23510
   Office Number: 757-441-6331
   Facsimile Number: 757-441-6689

   A copy of the foregoing will also be served electronically to the following non-ECF user:

Logan Graddy, MD, DFAPA (identified as hearing officer for planned *Harper* hearing)
Chief Psychiatrist
U.S. Department of Justice
Federal Bureau of Prisons
Federal Medical Center
P.O. Box 1600, Old Highway 75
Butner, North Carolina 27509-1600
Phone: 919-575-3900 x5361
Fax: 919-575-4866
E-Mail: lgraddy@bop.gov

        By:_____/s/_____

         Andrew W. Grindrod
         VSB # 83943
         Attorney for Eric Brian Brown
         Office of the Federal Public Defender
         150 Boush Street, Suite 403
         Norfolk, Virginia 23510
         (757) 457-0800
         (757) 457-0880 (telefax)
         andrew_grindrod@fd.org