# EXHIBIT ONE

# Declaration of Nurse Janet Oakley

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:17mj562 |
| | ) | |
| ERIC BRIAN BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

### DECLARATION OF *HARPER* HEARING STAFF REPRESENTATIVE

I, Janet L. Oakley, Registered Nurse, make the following declaration under 28 U.S.C. § 1746:

### Background and Experience

I am a North Carolina State Board Certified Nurse assigned to Federal Medical Center, Butner in North Carolina, beginning work here in June of 2001. In 1999, I graduated from Piedmont Community College in Roxboro, North Carolina with an Associate's Degree in Nursing. While working towards my degree, I worked at Roxboro Nursing Center and Treyburn@INH as a Licensed Practical Nurse. After receiving my nursing degree and my professional licensure in North Carolina, I began working at John Umstead Hospital in Butner, North Carolina as a Staff Registered Nurse. I remained at John Umstead Hospital until I was hired by Federal Medical Center Butner in May of 2001.

I am presently board certified in the state of North Carolina and remain in good standing with the North Carolina State Board of Nursing. In order to maintain an active license, I am required to renew my license every two years, which requires proof of the completion of thirty hours of continued medical education. For the past seventeen years during my tenure at Federal Medical Center Butner, I have attended mental health related trainings whenever available,

including internal Bureau of Prisons trainings, National trainings, and trainings at the University of North Carolina. I also participate in online trainings and seek specific trainings in the field of mental health, as such training is instructional for my position at Federal Medical Center Butner.

As part of my employment with Federal Medical Center Butner, I am required to undergo an RN Clinical Skills Assessment Program on an annual basis. In February of 2018, I attended Federal Medical Center Butner's 2018 Nursing Competencies Annual Training Review and successfully completed the review. In April of 2018, I underwent the assessment process and successfully completed all sixteen required skills assessments.

I have been employed at Federal Medical Center Butner for approximately seventeen years now, and have worked as a nurse in the mental health units during my entire tenure there. These units contain individuals suffering from various mental health disorders, including schizophrenia. I have worked in full lock-down units, partial lock-down units, and open mental health units during my time at Federal Medical Center Butner, all of which contain inmates with mental health conditions undergoing various levels of treatment.

### Eric Brian Brown's *Harper* Hearing

On June 1, 2018, medical personnel at FMC Butner held a hearing under 28 C.F.R. § 549.46, also known as a *Harper* hearing, to determine whether involuntary administration of psychiatric medication is necessary because, as a result of Eric Brian Brown's diagnosed schizophrenia, he is a danger to himself or others, poses a serious threat of damage to property affecting the security or orderly running of the institution, or is gravely disabled as manifested by extreme deterioration in personal functioning. I was Mr. Brown's staff representative. I have experience as a staff representative at these hearings, having served in that role at FMC Butner for approximately fifteen years. During the past approximately fifteen years, I have served as the staff

2

representative in countless *Harper* hearings, participating in several each year. I cannot say with certainty the exact number of hearings I have attended as a staff representative.

Generally, the purpose of a staff representative is to provide the inmate in question with a connection to any witnesses, documentation, or information he wishes to present at the hearing. As inmates are limited in their ability to access such information and may not always know the names of staff members, my role is to ensure that such information is available to the inmate at the hearing. As a nurse and experienced employee, I also have an understanding of the hearing process and can offer support and answer questions that the inmates may have about the hearing. My goal is to ensure that all procedural rights are preserved prior to and during the hearing.

As the staff representative for Mr. Brown, I had several duties prior to the hearing that took place on June 1, 2018. On May 31, 2018, I notified Mr. Brown of the date, time, place, and purpose of the hearing and informed him that I had been assigned as his staff representative, as he had not requested one. He did not request that any other person act as his staff representative. I then informed him that he could attend the hearing with me and that he could request witnesses that would appear on his behalf. Finally, I informed him that he could appeal the decision of the hearing officer if he did not agree with the outcome, and that I would assist him with that process. During this interaction, Mr. Brown remained nonverbal and did not make any statements regarding the information provided.

Also on May 31, 2018, at approximately 1:10 p.m., I notified Mr. Brown's attorney, Mr. Andrew William Grindord, that an administrative hearing would be held on June 1, 2018, regarding the potential involuntary administration of medication to Mr. Brown. This conversation was conducted by telephone. During the conversation, I answered several of Mr. Grindrod's questions, including informing him that he could not attend the hearing, that we would inform him

3

of the results of the hearing, and that the psychiatrist attending to Mr. Brown's needs would determine what medications, if any, would be utilized to treat Mr. Brown. I then provided Mr. Grindrod with the phone number for FMC Butner and specifically provided him with the extension at which I could be reached if he had any other questions or wanted to provide any information. Subsequently, Mr. Grindrod sent an email to me and Dr. Logan Graddy which included a lengthy document detailing why Mr. Brown should not be involuntarily medicated and why the hearing should not take place.

In preparation for the hearing, I reviewed the Bureau of Prisons' policy regarding psychiatric evaluations and treatment as well as Mr. Brown's file. I drafted a memorandum, included in the hearing packet, detailing my interactions with Mr. Brown prior to the hearing.

The hearing took place at Mr. Brown's unit. Before the hearing was scheduled to begin, I reported to Mr. Brown's cell to speak with him about attending the hearing. Upon my arrival at Mr. Brown's cell, I found the cell window covered such that I could not see into the cell. I was informed by correctional services staff that Mr. Brown had received a hard lunch tray with his food, but had refused to return the tray after completing the meal. In addition, Mr. Brown had placed an object in the food slot such that it could not be closed. As a correctional officer approached the cell to connect a security box to the food slot, Mr. Brown attempted to throw an unknown liquid on the officer. I saw on the cell's video monitor that Mr. Brown was standing naked and motionless in front of his door. He stayed in that position for at least thirty minutes and refused to verbally respond to staff or leave the cell to attend the hearing.

At the hearing, Dr. Dean Cutillar, the hearing officer, asked me to make a statement on behalf of Mr. Brown. During my statement, I explained Mr. Brown's behavior immediately prior to the hearing, including that he was holding his food slot hostage, was standing naked in his cell,

4

had not changed his physical position for at least thirty minutes, and had attempted to assault a staff member with an unknown liquid. I also discussed Mr. Brown's unwillingness to attend the hearing or speak to me regarding the hearing or his behavior. Finally, I explained that Mr. Brown had been refusing medical evaluations including checks on his vitals, blood draws, and other physical examinations, for several months. As a nurse, I provided background as to how this behavior impacts the Health Services Department's ability to provide a medical workup for Mr. Brown and effects our ability to monitor his physical health. I noted that Mr. Brown was consuming regular meals, but that he was not partaking in regular hygiene.

After my statement, Dr. Logan Graddy, Mr. Brown's evaluating psychiatrist, was called to present clinical data and background information about Mr. Brown's need for psychiatric medication. Dr. Graddy concluded that Mr. Brown's mental health had deteriorated since his arrival at FMC Butner because Mr. Brown had refused to take any medication for his diagnosed schizophrenia and that as a result, Mr. Brown posed a danger to himself or others and was gravely disabled. Dr. Graddy recommended involuntary medication and proposed a treatment plan. As Mr. Brown's staff representative, I had the opportunity to ask Dr. Graddy questions regarding Mr. Brown's presentation and the proposed treatment plan. However, after considering the comprehensive statement made by Dr. Graddy, I did not believe that any questions remained unanswered. My review of Mr. Brown's records indicated that Dr. Graddy had appropriately discussed Mr. Brown's presentation while at Federal Medical Center Butner and that Dr. Graddy had provided a complete picture of Mr. Brown, not simply the factors in favor of medicating him.

Because of a family medical issue, I was not aware of the outcome of the hearing until Monday, June 18, 2018, as I have been on scheduled leave. I was not involved in the appeal process of the hearing, nor have I communicated with Mr. Brown about the results of the hearing.

As explained above, I acted in accordance with policy and the relevant federal regulations as Mr. Brown's staff representative. I am a qualified staff representative and represented Mr. Brown's interests sufficiently during the hearing.

Should there be any questions, I am available to address those questions by phone or email. I am unavailable to attend the Court hearing Thursday because my husband is undergoing intensive chemotherapy and I will be providing care for him on Thursday during and after his chemotherapy.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Federal Medical Center, Butner, North Carolina, on this 19th day of June, 2018.

By: *Janet Oakley, Registered Nurse* (signature)
Janet Oakley, Registered Nurse