# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Norfolk Division

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                          **CRIMINAL ACTION NO. 2:17-mj-562**

**ERIC BRIAN BROWN,**

    **Defendant.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is the Government's Motion to Extend Defendant's Mental Health Treatment and Eric Brian Brown's ("Defendant") Oral Motion for a hearing on the substantial probability that Defendant will regain competency. For the reasons set forth below, the Government's Motion is **GRANTED,** and Defendant's Oral Motion is **DENIED.**

### I.    FACTUAL AND PROCEDURAL HISTORY

On November 7, 2017, Defendant was charged with kidnapping in violation of 18 U.S.C. § 1201(a)(1), (2). ECF No. 3. On December 1, 2017, the Government moved for a psychiatric examination to determine Defendant's competency to stand trial. ECF No. 15. The Court granted this motion on December 15, 2017. ECF No. 17. On January 23, 2018, the Bureau of Prison's ("BOP") clinician filed their findings. ECF No. 20. On January 25, 2018, based on the clinician's findings, the Court found Defendant incompetent to stand trial and that he should be committed to the custody of the Attorney General for further evaluation for no more than four months. ECF No. 24.

On May 31, 2018, Defendant filed an emergency motion to preliminarily enjoin the clinicians at the clinic in Butner, North Carolina from involuntarily medicating Defendant. ECF

1

No. 26. On June 4, 2018, the Court denied this motion for lack of ripeness but also ordered that any forcible medication be stayed until the Court determines its appropriateness. ECF No. 30. On June 12, 2018, Defendant filed a new motion to enjoin forcible medication after the clinic in Butner, North Carolina held a *Harper* hearing and determined it was necessary to involuntarily medicate Defendant to avoid harm to himself or others. ECF No. 34. On June 22, 2018, after a hearing, the Court denied this motion, finding that the BOP may forcibly medicate Defendant, and lifted the June 4, 2018 stay. ECF No. 45.

On July 13, 2018, the BOP's psychiatric report confirmed Defendant's psychiatric incompetency. ECF No. 46. The BOP recommended Defendant be further evaluated for another four months to restore his competency. ECF No. 46 at 11. On September 18, 2018, the Magistrate Judge ordered *nunc pro tunc*, June 22, 2018, that Defendant be committed for an additional four months because there was a substantial probability that he would regain competence under § 4241(d)(2)(A). ECF No. 48. That commitment terminated on October 20, 2018. ECF No. 56 at 3. The BOP filed another psychiatric report dated October 22, 2018 addressed to the Magistrate Judge, which was filed before this Court on November 9, 2018, asking for an additional 120 days to restore Defendant's competence since he has been improving with his current medication but has not fully regained competency.[1] ECF No. 59.

On October 19, 2018, Defendant filed a motion for a status conference to request a hearing to challenge the feasibility of Defendant regaining competence after an additional 120 days.[2] *Id.* at 3–6. A hearing was held on November 13, 2018. ECF No. 60. The Government filed their Motion to Extend Defendant's Mental Health Treatment on November 6, 2018. ECF

---

[1] The Court notes that the BOP's letter to the Magistrate Judge was also sent to the attorneys of both parties, but neither party informed the Court of this new report until the day of the hearing.
[2] To the extent the Court has not ruled on this motion, the Court notes that it has granted this motion since it did hold a hearing on November 13, 2018.

2

No. 58. Defendant's counsel opposed the motion during the November 13, 2018 status conference and has since filed a brief letter in opposition. ECF No. 62. The Government then filed its reply on November 20, 2018. ECF No. 63. Given that Defendant has adequately stated his arguments against the Government's motion, the Court finds that the motion is ripe for disposition.

## II. LEGAL STANDARD

Section 4241 of Title 18 of the United States Code governs the procedure used for determining a defendant's competency. Specifically, § 4241(d) provides that a court can order a defendant to be committed to the custody of the Attorney General and that the Government will hospitalize a defendant:

> (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
> (2) for an additional reasonable period of time until—
>   (A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
>   (B) the pending charges against him are disposed of according to law;
> whichever is earlier.

§ 4241(d). While the Attorney General cannot hold a defendant for longer than four months absent a court order extending the time, it is harmless error if a court enters such an order shortly after the expiration of the original order committing defendant. *United States v. Magassouba*, 544 F.3d 387, 409–10 (2d Cir. 2008) (finding harmless error for hospitalizing a defendant under § 4241 for three weeks after the initial four months expired); *see United States v. Barfield*, 969

3

F.2d 1554, 1556–57 (4th Cir. 1992) (applying the harmless error standard in the context of violations related to competency hearings under § 4241).

### III. DISCUSSION

#### A. Hearing under § 4241(d)(2)(A)

The parties dispute whether § 4241(d)(2)(A) requires the Court to hold a hearing to determine if Defendant should be hospitalized for an additional 120 days or if the Court can rely on the psychiatric report alone to determine if there is a substantial probability of Defendant regaining competency.

When interpreting a statute, courts generally believe that "'[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *United States v. Serafini*, 826 F.3d 146, 149–50 (4th Cir. 2016) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Moreover, courts "must try to give every word in the statute meaning to avoid rendering its terms superfluous." *Espinal-Andrades v. Holder*, 777 F.3d 163, 168 (4th Cir. 2015) (citing *Discover Bank v. Vaden*, 396 F.3d 366, 369 (4th Cir. 2005)).

Section 4241 clearly contemplates that courts shall hold hearings in specific instances. Courts should hold a hearing to make the initial determination of competency. § 4241(a). Another hearing is required if the director of the medical facility determines that the defendant is no longer incompetent. § 4241(e). However, the statute does not mention that a hearing is required for any of the commitment provisions in § 4241(d). That subsection only references the initial § 4241(a) hearing. *See* § 4241(d). Given the structure of the statute, if Congress intended the Court to hold a hearing each time it had to make a finding of substantial probability that Defendant would attain competency, it would have explicitly stated so. Furthermore, if every

determination under § 4241 requires a hearing then all the mentions of hearings in the statute would be superfluous. Therefore, § 4241(d) does not require the Court to hold a hearing to determine if "there is a substantial probability that within such additional period of time [Defendant] will attain the capacity to permit the proceedings to go forward." *Id.*

Moreover, courts in this Circuit have made their findings under § 4241(d)(2)(A) by relying on the BOP's psychiatric report and not holding a hearing; instead, courts hold a hearing after the psychiatric report has noted no significant progress in defendant's competency. *See United States v. Kokoski*, 82 F.3d 411, at *3 (4th Cir. 1996) (unpublished table decision) (holding that district court validly found a substantial probability under § 4241(d)(2)(A) after it "relied on forensic reports written by qualified personnel stating that there was a substantial probability of future competency . . . [and] indicated that [the defendant's] condition was improving."); *United States v. Kirby*, No. 2:90-64, 2014 WL 3778920, at *2–*3 (S.D.W. Va. July 31, 2014) ("The court will provide either party an opportunity to be heard, at the end of the applicable time period specified in section 4241(d), respecting the further action, if any, to be taken in the case."); *United States v. Crumpler*, No. 5:12-cr-173, 2013 WL 6843009, at *1–*2 (E.D.N.C. Dec. 27, 2013) (stating that the BOP staff submitted a report finding that the defendant has a substantial probability of regaining competency, and "[t]he court accordingly granted FMC Butner's request for an additional 120–day commitment for continued evaluation and competency restoration treatment" and holding a hearing after two commitment orders had expired and the facility had determined there had not been progress in defendant's competency); *cf. United States v. Murray*, No. 7:04-cr-123, 2011 WL 649934, at *2–*4 (E.D.N.C. Feb. 10, 2011) (finding a substantial probability after holding a hearing because the Government's repeated release and re-commitment of the defendant to federal medical facilities and the fact that defendant had been

off of his medication for three months); *but see United States v. Colvin*, No. 5:15-cr-211, 2017 WL 432791, at *1–*2 (E.D.N.C. Jan. 31, 2017) (relying on the psychiatric report to find a substantial probability because neither party objected to its findings).

The Court also recognizes that the Magistrate Judge had already ordered Defendant be committed under § 4241(d)(2)(A). *See* ECF No. 48. The statute contemplates that a defendant can be committed "for an additional reasonable period of time" but does not have a set maximum time period. § 4241(d)(2). Under this subsection "an additional reasonable period of time" is "some reasonable, but statutorily undefined, period of time. *Kokoski*, 82 F.3d 411, at *1. The limit is that the Court will not further commit the defendant once it cannot "find[] that there is a substantial probability" that he will regain competency. § 4241(d)(2)(A). As such, the Court has the power to commit Defendant under § 4241(d)(2)(A) just as the Magistrate Judge did on September 17, 2018.

Defendant argues that not holding an evidentiary hearing would deprive him of due process based on his interest in the length of his confinement under *Jackson v. Indiana*, 406 U.S. 715. 731 (1972). ECF No. 62 at 3. Defendant argues that without a hearing, a § 4241(d)(2)(A) determination would deprive him of "a meaningful opportunity to be heard and a meaningful opportunity to tests the government's evidence." *Id.* But Section 4241 was enacted in response to *Jackson*, and the due process offered under this statutory scheme is sufficient. *See United States v. Magassouba*, 544 F.3d 387, 403 (2d Cir. 2008); *United States v. General*, 278 F.3d 389, 396 (4th Cir. 2002); *Kokoski*, 82 F.3d 411, at *3–*4. Therefore, the hearings under § 4241(a) and (e) satisfy any due process concerns, and denying any additional hearings does not *per se* violate Defendant's due process rights.

Defendant also argues that the hearing is his "only means of obtaining the underlying facts and data upon which the BOP's opinions are based." ECF No. 62 at 3. Defendant notes that when his counsel initially requested documents from the medical facility in Butner, North Carolina, the BOP denied his request and referred him to FOIA process. *Id.* The Court does not opine as to the propriety of the BOP's denial of access to the underlying documents to Defendant's counsel as that issue is not properly presented. To the extent that the Government will be using any of the staff at Butner as expert witnesses at a future competency hearing and such, Defendant may request the underlying documents then. *See* Fed. R. Crim. P. 16(a)(1)(F), (G). At this juncture, a hearing does not become necessary simply out of Defendant's desire to expedite discovery.

Based on its interpretation of the statute and the persuasive precedent, the Court finds that it does not have to hold a hearing to make its finding under § 4241(d)(2)(A).

**B. Substantial Probability**

Defendant and the Government also disagree as to the meaning of "substantial probability." *Compare* ECF No. 62 at 3–4 *with* ECF No. 63 at 8–9. Defendant argues that this phrase means "much more likely than not" or "highly likely to occur." ECF No. 62 at 3. In support, Defendant cites several cases, although none of them directly deal with § 4241. *Id.* at 3–4. The Government argues it means "any probability worth taking seriously, which could very well be a probability of less than [fifty] percent." ECF No. 63 at 8–9. The Government relies on *United States v. Loughner* (*Loughner I*), 4:11-cr-1187, ECF No. 343 (D. Ariz. Sept. 30, 2011), *aff'd*, 672 F.3d 731, 770 (9th Cir. 2012).

"Substantial probability" does not have an agreed upon definition. *See Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 n.4 (8th Cir. 2008) (recognizing the

unclear meaning of the phrase in the context of prevailing on a preliminary injunction); *compare United States v. Loughner (Loughner II)*, 672 F.3d 731, 769 (9th Cir. 2012) (affirming the district court's determination that the phrase means "any probability worth taking seriously") *with Adams v. Bartow*, 330 F.3d 957, 959 (7th Cir. 2003) (noting that expert witness defined the phrase as "much more probable than not" in the context of a state statute regarding confining sexually violent people).

The phrase "substantial probability" has been defined in other contexts outside of § 4241. It has been construed as "highly likely to occur," *City of Carter Lake v. Aetna Cas. & Sur. Co.*, 604 F.2d 1052, 1058–59 n.4 (8th Cir. 1979)), or "more than a 'reasonable probability'" in the context of exclusionary clauses of insurance policies. *Brosnahan Builders, Inc. v. Harleysville Mut. Ins. Co.*, 137 F. Supp. 2d 517, 527 (D. Del. 2001) (quoting *New Castle Cnty. V. Continental Cas. Co.*, 725 F. Supp. 800, 813 (D. Del. 1989)). It can mean "possible ... [with a] probable result" under the Occupational Safety and Health Act. *St. Joe Minerals Corp. v. Occupational Safety & Health Review Comm'n*, 647 F.2d 840, 847 (8th Cir. 1981). The phrase has also been taken to mean "'less than preponderance but more than a mere possibility'" for a mass tort action in the bankruptcy context. *In re Joint E. and S. Dist. Asbestos Litig.*, 129 B.R. 710, 826–27 (E.D.N.Y. 1991), *vacated*, 982 F.2d 721 (2d Cir. 1992) (quoting *In re Agent Orange Prod. Liab. Litig.*, 100 F.R.D. 718, 726 (E.D.N.Y. 1983)). It has been suggested that the phrase means "much more probable than not" under a state statute that governs the confinement of sexually violent people. *Adams*, 330 F.3d at 959. The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has taken a "substantially certain" standard to mean "highly likely to occur" in the context of benefit plans. *Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 826 (4th Cir. 2013) (quoting *City of Carter Lake*, 604 F.2d at 1058–59 n.4).

However, neither the Fourth Circuit nor any of the district courts within the circuit have discussed "substantial probability" under § 4241. In fact, the Court could not find any federal case addressing the definition of "substantial probability" under § 4241, save *Loughner*. The statute itself is silent as to the definition of this standard.

The Court therefore looks to the plain meaning of each of these terms. *Sibert v. Wells Fargo Bank, N.A.*, 863 F.3d 331, 337 (4th Cir. 2017) (quoting *In re Sunterra Corp.*, 361 F.3d 257, 265 (4th Cir. 2004)). "Probability" refers to "something that is likely," *Probability*, BLACK'S LAW DICTIONARY (10th ed. 2014), or something that is "uncertain but more likely than not." *Probability*, OXFORD ENGLISH DICTIONARY (3d ed. 2007). "Substantial" means that something is "real and not imaginary . . . strong, solid and firm," *Substantial*, BLACK'S LAW DICTIONARY, or "firmly or solidly established." *Substantial*, OXFORD ENGLISH DICTIONARY.

For comparison, "preponderance of the evidence" is defined as more probable than not. *United States v. Span*, 789 F.3d 320, 334 (4th Cir. 2018) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993)). The Government argues that "substantial probability" is lower than this standard. ECF No. 63 at 8. On the other end of the spectrum, "clear and convincing evidence" is defined as "highly probable or reasonably certain." *RZS Holdings AVV v. PDVSA Petroleos S.A.*, 598 F. Supp. 2d 762, 772 (E.D. Va. 2009) (citing BLACK'S LAW DICTIONARY (8th ed. 2004)). Defendant seems to argue that "substantial probability" rises to this level. *See* ECF No. 62 at 3–4.

Setting "substantial probability" below "preponderance of the evidence" would contravene the plain meaning of the words. If "preponderance of the evidence" means that something is at least probable, then "substantial probability" must be higher than that burden. Therefore, the Court cannot agree that "substantial probability" should be less than fifty percent.

However, the Court does not believe that this standard is equivalent with "clear and convincing evidence." That standard has been well-established, and if Congress intended to use that standard, § 4241 would have been written differently.

Therefore, the Court finds that "substantial probability" under § 4241 falls in between these two standards. "Substantial probability" means that the chance of competency must be firmly established and be more likely than not. This does not mean that there must be reasonable certainty, but it also does not merely allow for any probability. The Court will instead evaluate the possibility of competency based on whether there is a well-founded basis to support the idea that Defendant is more likely than not to regain competency.

**C. Defendant's Substantial Probability of Competence**

The Court, in its discretion, may rely on the BOP's psychiatric report. Here, the BOP has filed a report that details Defendant's progress since he has been committed in Butner. Before receiving any medical treatment, Defendant exhibited various behaviors of severe mental disease or defect. *See* ECF No. 59 at 5. After the Court's review of the *Harper* hearing on June 22, 2018, and he first began receiving antipsychotic medication, Defendant "was more compliant with staff directives. However, [he] did not evidence significant improvement in his mental status" until several doses later. *Id.* at 6. He eventually was able "to engage in meaningful conversation and began voicing some desire to advance his legal proceedings," which led to him participating in a formal interview with his psychiatrist on September 21, 2018. *Id.* As a result, Defendant has been "transferred from the most secure locked housing unit . . . to a less restrictive, semi-locked housing unit." *Id.* at 7. Most recently, on October 5, 2018, Defendant was allowed more time "outside of his cell and in common areas of the housing unit." *Id.* The reports still notes that Defendant still has "some residual psychotic symptomatology." *Id.* at 8.

He appears to continue have some auditory hallucinations and paranoia. *Id.* Based on these trends, the report states:

> [Defendant] has evidenced slow yet consistent improvement in his mental status and behavioral functioning. While he remains symptomatic, he has been willing and able to engage in some competency restoration efforts. . . . Overall, Mr. Brown has evidenced improved mental health functioning but not to such an extent that his competency to stand trail has been restored. Further improvement in [Defendant's] mental status and behavioral functioning is expected with continued treatment with antipsychotic medication. . . . At this time, it is the opinion of the undersigned evaluator that there is a substantial probability that [Defendant] will demonstrate that he is competent to stand trial [after an additional 120 days].

*Id.* at 9–10.

Defendant argues that the Court should not rely on this report because the June 22 report also stated that the psychiatrists believed Defendant would have a substantial probability to regain competency by the end of four months from then, October 20. ECF No. 62 at 2–3. The Court disagrees. The task of the Court today is to determine if there is a substantial probability that Defendant will regain competency four months from October 21, 2018. While the Court does consider the fact that Defendant is not competent even though the June 22, 2018 report also stated Defendant would be competent by now, the fact that Defendant did not fully regain competence by October 20, 2018 does not sufficiently rebut the progress laid out in the report. Hindsight is 20/20, but that should not unduly skew the Court's review of the October 22 report now before it.

According to the report, Defendant's most recent progress occurred on October 5, 2018, with the increase of time in common areas. ECF No. 59 at 7. He was not allowed this amount of freedom of movement when he was first admitted to Butner on December 15, 2017 or even when the Magistrate Judge issued its order under § 4241(d)(2)(A) on September 18, 2018. Therefore,

11

the Court finds that Defendant has a substantial probability of regaining competency if committed a further 120 days. The progress he has shown according to the report provides a sufficient factual basis for the Court's finding. Therefore, the Court finds that the report provides a well-established basis to support the idea that Defendant is more likely to regain competency than not after an additional 120 days.

**D. *Sell* Hearing**

Finally, to the extent that Defendant argues that he is entitled to a *Sell* hearing immediately, that is incorrect. The Court originally ruled Defendant could be forcibly medicated after confirming the BOP's *Harper* Hearing. *See* ECF Nos. 44–45. *Sell* itself specifically noted that the Court does not have to delve into the *Sell* analysis "if forced medication is warranted for a different purpose, such as the purposes set out in *Harper* related to the individual's dangerousness." *Sell v. United States*, 539 U.S. 166, 181–82 (2003); *United States v. Evans*, 404 F.3d 227, 235 n.3 (4th Cir. 2005). Because Defendant has already been determined to need forcible medication under *Harper*, the Court need not go through the *Sell* factors at this time.

## IV. CONCLUSION

For the reasons stated above, the Court finds that there is a substantial probability that Defendant will be able to achieve competency after an additional 120 days of commitment at the facility in Butner. The Government's Motion is **GRANTED**. Defendant's Oral Motion is **DENIED**. The Court **ORDERS** that Defendant be committed to the medical facility in Butner, North Carolina for an additional 120 days, retroactive as of October 21, 2018, pursuant to 18 U.S.C. § 4241(d)(2)(A). Such a commitment will expire on February 18, 2019. The Court further **ORDERS** that within seven days before the expiration of this period (February 11, 2019), the director of the medical facility at Butner shall advise the Court as to whether or not

Defendant has successfully regained competence. If Defendant has not attained competency to proceed in his trial, the Court shall address further remedies pursuant to 18 U.S.C. §§ 4246, 4248, or any other relief, as the Court may find appropriate.

**IT IS SO ORDERED.**

Norfolk, Virginia
November 27, 2018

/s/
Raymond A. Jackson
**United States District Judge**